# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

---

Leonard F. Joy
*Executive Director and
Attorney-in-Chief*

October 1, 2010

*Eastern District*
Peter Kirchheimer
*Attorney-in-Charge*

The Honorable Frederic Block
Senior United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:**   *United States v. Kirk Douglas Green*, CR 10-129 (FB)

Your Honor:

     Mr. Kirk Douglas Green pleaded guilty to illegally reentering the United States after deportation, in violation of 8 U.S.C. § 1326(a). Mr. Garcia agrees with the probation department that the total offense level in his case is correctly calculated as level 17. However, his criminal history category is overstated by the probation department: he is in criminal history category III, not IV. Thus the sentencing range in this case is 30-37 months. Because a 17 year old conviction, irrelevant to any sentencing considerations, results in a 12 level enhancement, it would be unreasonable to sentence Mr. Green to such a lengthy sentence.

     Mr. Green also moves for a sentence below the applicable guideline range based on the factors listed at 18 U.S.C. §3553(a). Mr. Green's history and characteristics, including his family responsibilities are reasons for a more lenient sentence. The nature and circumstances of the offense, including Mr. Green's motivation for returning argue for a sentence below the guideline range.

### Objections to the PSR

     Mr. Green objects to ¶¶ 26 and 32 of the presentence investigation report (PSR). PSR ¶ 26 indicates that Mr. Green was sentenced to 90 days of custody for a misdemeanor stolen property conviction. In fact, as noted at ¶ 26, Mr. Green was sentenced to a conditional discharge on condition that he pay a $500 fine. The 90 day custodial term was the *alternative* sentence to be imposed if Mr. Green did pay the fine (this "fine or time" sentence is often imposed for misdemeanor convictions in New York state courts). Because Mr. Green paid the $500 fine, he served no jail time for that conviction and therefore one, not two, criminal history point should be added to his score for that incident. This one point reduction in the criminal history score reduces Mr. Green's total criminal history points to 6 from 7. He is thus properly placed in criminal history category III.

### Guideline calculation

In 1993, Mr. Green was convicted of attempted criminal sale of a controlled substance in Riverhead, New York. He was sentenced to 90 days of custody, which ran concurrently with 5 years of probation. This conviction involved a small, street-level amount of narcotics and Mr. Green's role was that of a "steerer," meaning that when someone asked him where to buy cocaine he directed them to the seller. Though this conviction occurred 17 years ago and resulted in a relatively short sentence, it is counted under USSG §2L1.2(b)(1)(B). Because of this nearly two decade old conviction, Mr. Green receives a substantial 12 point guideline enhancement, more than doubling the base offense level of 8. *See* USSG §2L1.2(a).

The Guideline Commission's approach to whether old convictions should operate to increase a defendant's sentence is haphazard. In Chapter 4, the Commission appears to recognize that old convictions do not warrant increased punishment. *See* USSG §4A1.1, comment. (nn. 1-3)(excluding certain convictions from criminal history calculations when they are more than 10 or 15 years old.)[1] This approach carries over into some sections of Chapter 2, where older convictions do not increase a defendant's offense level. *See* USSG §2K2.1, comment. (n. 10)(applying enhancements only where the conviction receives criminal history points under Chapter 4). Yet, no such time limitation exists in USSG §2L1.2. The disparity cannot be explained by looking at the statute which defines the crime. Neither the illegal reentry statute, 8 U.S.C. §1326(a), or the felon in possession of a firearm statute, 18 U.S.C. § 922(g), limits the time period during which a prior felony conviction can be an element of a crime, but the Commission still treats the two crimes differently. There appears to be no rational reason for this disparity.

It is unreasonable to use a 17 year old conviction to increase a defendant's sentence. While a prior crime committed near in time to a new conviction is relevant when determining the likelihood of recidivism and the defendant's moral culpability, an aged conviction carries no such relevance. This concept is well accepted and codified at several places. *See, e.g.* FED. R. EVID. 609(b)(imposing a 10 year time limit on the use of a conviction to impeach a witness). In short, a conviction which occurred 17 years in the past is simply not relevant in determining a defendant's culpability or risk of recidivism.

Mr. Green's 1993 conviction is not reasonably related to the instant sentence; it is not relevant to the issues which must be decided by this Court . It would be unjust to use that conviction to increase his punishment here. Despite the Guideline Commission's failure to codify a time limit for convictions which increase a defendant's guideline range under USSG

---

[1] Because it is too old, Mr. Green's 1993 conviction does not add to his criminal history score under these guideline sections.

§2L1.2, such a time limit is appropriate. If Mr. Green's sole prior felony convictions were not counted (none count towards his criminal history classification because of their age), his guideline range would fall to 2-8 months. *See* USSG §2L1.2(a).

### 18 U.S.C. § 3553(a)

As the Court knows, under 18 U.S.C. § 3553(a), courts are required to impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. Section 3553(a)(2) states that such purposes are:

1. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense
2. to afford deterrence to criminal conduct:
3. to protect the public from further crimes of the defendant; and
4. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

To arrive at such a sentence, the Court is further directed to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the kinds of sentences available; (3) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (4) policy statements issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution to any victims of the offense *See* 18 U.S.C. § 3553(a)(1).

### The circumstances of the offense and the history of the offender

Mr. Green was born and raised in desperate poverty in Kingston, Jamaica. His father left the family to immigrate to the United States when Mr. Green was about 5 years old. Mr. Green's mother was unhappy and physically abused Mr. Green after his father left the household. Mr. Green was forced to quit school at age 11 so that he could try to earn money to help his mother and siblings. At age 14, Mr. Green left home and began supporting himself.

Mr. Green came to the United States in 1990 when he was 28 years old. Initially, he worked at his father's body shop on Long Island. After a few years of working for his father, Mr. Green began working as a street vendor, selling clothing. He has been plying this trade for the last 15 years or so. Mr. Green has 11 children, all of whom live in the United States and are citizens. He always provided financial support for his children when he was working and was also personally involved in their lives.[2]

---

[2] A photograph of Mr. Green's wife and 5 younger children is attached at exhibit A.

Page 4 of 4<br>
**United States v. Kirk Green**<br>
October 1, 2010

  After being deported in December 2007, Mr. Green stayed with his brother in Jamaica. He found it difficult to get work and he was unable to buy his diabetes medication which caused his health to decline precipitously. Because of these factors and because he missed his children and believed that he should assist in raising and supporting the, he returned to this country.

  Mr. Green's family responsibilities were the motivation for his return to the United States. His family will certainly suffer some hardship as long as he is incarcerated. These circumstances warrant a sentence more lenient than that recommended by the guidelines.

  Thank you for your attention to this matter.

Respectfully submitted,

Michael K. Schneider, Esq.<br>
(718) 330-1161

cc:  Clerk of the Court [by ECF]
    Mr. David C. Woll, Assistant U.S. Attorney
    Ms. Roberta Houlton, United States Probation Officer
    Mr. Kirk Green